JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Francis X. Grady, appeals the trial court's order granting the motion to dismiss filed by defendants: Lenders Interactive Services and its owner, Leonard Merzel.[1]
 {¶ 2} Plaintiff filed suit after he received one telemarketing facsimile advertising defendant's loan services. Plaintiff's first amended complaint ("complaint") alleged defendants had violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[2]
 {¶ 3} Defendants filed a motion to dismiss plaintiff's complaint which the trial court granted without written opinion. In this timely appeal, plaintiff presents one assignment of error for review:
 {¶ 4} The trial court erred in dismissing the plaintiff-appellant's complaint under ohio civil rule 12(b)(6).
 {¶ 5} Plaintiff argues the trial court erred in dismissing his complaint because he sufficiently stated a claim against defendants.
 {¶ 6} Pursuant to Civ.R. 12(B)(6), dismissal of a complaint is appropriate only "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." York v. Ohio State Highway Patrol
(1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. In resolving a Civ.R. 12(B)(6) motion, a court's factual review is confined to the four corners of the complaint. Within those confines a court presumes all factual allegations in the complaint are true, and all reasonable inferences from those facts are made in favor of the non-moving party. Fahnbulleh v. Strahan (1995),73 Ohio St.3d 666, 653 N.E.2d 1186; Krause v. Case Western ReserveUniv., (Dec. 19, 1996), Cuyahoga App. No. 70526.
 {¶ 7} On appeal, we conduct a de novo review of the complaint to determine whether dismissal was appropriate. Vail v. PlainDealer Publishing Co. (1995), 72 Ohio St.3d 279, 281,649 N.E.2d 182, citing Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190, 192, 532 N.E.2d 753.
 {¶ 8} In the case at bar, plaintiff's complaint alleges that in November 2001, plaintiff received an advertisement from defendants through his fax machine. The fax advertised the commercial availability of defendant's loan services. Because the advertisement was sent without plaintiff's prior invitation or permission, he asserts that defendants violated the TCPA.
 {¶ 9} The section of the TCPA plaintiff alleges defendants have violated is set forth in 47 U.S.C. § 227. In part, the statute defines what type of "junk" facsimile advertisements are illegal:
 {¶ 10} * * *
 {¶ 11} (b) Restrictions on use of automated telephone equipment.
 {¶ 12} Prohibitions. It shall be unlawful for any person within the United States, * * *
 {¶ 13} * * *
 {¶ 14} (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine;
 {¶ 15} * * *
 {¶ 16} Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State —
 {¶ 17} an action based on a violation of this
 {¶ 18} subsection or the regulations prescribed under this subsection to enjoin such violation,
 {¶ 19} an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both such actions.
 {¶ 20} "Under 47 U.S.C. § 227(b)(3)(B), a person is assessed a minimum of $500 `for each violation.' A violation occurs when a person `uses any telephone facsimile machine, computer, or other device to send an unsolicited advertisement' to a telephone facsimile machine. 47 U.S.C. § 227(b)(1)(C). An `unsolicited advertisement' is any material advertising the commercial availability or quality of any property, goods, or services.47 U.S.C. § 227(a)(4)." Harjoe v. Herz Financial (2003),108 S.W.3d 653, 656.
 {¶ 21} In the case at bar, defendants argue that the TCPA applies only to commercial advertisements sent by facsimile to private and individual residences, not businesses. We reject this argument for two reasons. First, plaintiff's complaint does not identify the location where he received defendants' fax. Defendants claim, therefore, that their fax was received at a business location is unsupported by the complaint, which provides all the facts this court may review.
 {¶ 22} Second, the TCPA does not limit who the receiver of an illegal fax has to be. This case was brought under47 U.S.C. § 227(b)(1)(C) and (b)(3) of the TCPA. This section deals with commercial advertisements sent through "automated telephone equipment" to a "telephone facsimile machine." This part of the statute unambiguously states that a "[p]rivate right of action" belongs to "[a] person or entity * * *." (Emphasis added.)
 {¶ 23} Defendants' reliance therefore on Adamo v. ATT,
(Nov. 8, 2001), Cuyahoga App. No. 79002, is misplaced becauseAdamo was decided under 47 U.S.C. § 227(c)(5), an entirely different section of the TCPA at issue here. Section (c)(5) deals with telephone solicitations and infractions against "[a]person who has received more than one telephone call within any 12-month period * * *." (Emphasis added.)
 {¶ 24} The difference between the two sections of the TCPA is explained in Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,
(May 6, 2004), 2004 Tex. App. LEXIS 4152, in which the appellate court recited some of the reasons behind the enactment of the TCPA:
 {¶ 25} From 1989 to 1991, Congress considered various bills addressing the telemarketing practices made possible by technological innovations, including the transmission of advertisements by fax * * *.
 {¶ 26} * * *
 {¶ 27} In drafting the bills, Congress became aware of several problems associated with unsolicited fax advertisements. See Telemarketing Practices: Hearing on H.R. No. 628, H.R. No. 2131, and H.R. No. 2184 Before the Subcomm. on Telecomms. and Fin. of the House Comm. on Energy and Commerce, 101st Cong., 1st Sess., at 54-57 (1989) (hereinafter "Telemarketing Practices"); H.R. Rep. No. 102-317, 1st Sess., at 25 (1991).
 {¶ 28} * * *
 {¶ 29} "Business owners [were] virtually unanimous in their view that they [did] not want their fax lines tied up by advertisers trying to send messages." Telemarketing Practices, supra, at 54-55 (footnotes omitted). "Extensive research * * * revealed no case of a company (other than those advertising via fax) which opposed legislation restricting advertising via fax." Id. at 54 n. 35.
 {¶ 30} * * *
 {¶ 31} Richard Kessel, a New York state official, spearheaded the movement to ban unsolicited fax advertisements in his state after he was unable to fax a document to the governor's office which, at the time, was processing an incoming advertisement. See Telemarketing Practices, supra, at 55. "The last thing you want when you're trying to meet a deadline, or trying to get a memo to your boss * * * is to be disturbed by someone trying to sell draperies or submarine sandwiches." Id. * * *
 {¶ 32} The legislative counsel for the American Civil Liberties Union, Janlori Goldman, told the House subcommittee, "we * * * support the . . . limits on fax machines, in terms of sending unsolicited advertising. We think that because of the burden that is placed on the individual who has to pay for the cost of the communication, that that then justifies [a] broader ban [than that placed on telephone solicitations]." Telemarketing/Privacy Issues: Hearing on H.R. No. 1304 and H.R. No. 1305 Before the Subcomm. on Telecomms. and Fin. of the House Comm. on Energy and Commerce, 102d Cong., 1st Sess., at 47. The subcommittee was well aware that a "festering problem [had] arisen from the so-called `junk fax.' Junk fax is more than merely irritating. It represents an unfair shifting of the cost of advertising from the advertiser to the unwitting customer * * *. Unsolicited and unwanted faxes can tie up a machine for hours and thwart the receipt of legitimate and important messages." Id. at 3-4.
 {¶ 33} Congress recognized that, although considered "an office oddity during the mid 1980s, the facsimile machine has become a primary tool for business to relay instantaneously written communications and transactions." H.R. Rep. No. 102-317, 1st Sess., 10 (1991). By 1991, millions of offices in the United States were sending more than thirty billion pages of information by fax each year in an effort to speed communications and cut overnight delivery costs. Id. But "the proliferation of fax machines has been accompanied by explosive growth in unsolicited facsimile advertising, or `junk fax.'" Id. at 10. "Facsimile machines are designed to accept, process, and print all messages . . . The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that [they] will be received and printed by the recipient's machine. This type of telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." H.R. Rep. No. 102-317, supra, at 10. * * *
 {¶ 34} Id., at 22-26.
 {¶ 35} In the case at bar, we are persuaded by the analysis used in Chair King, supra, and guided by the express language used in the statute. Chair King, at 39-40, cites TRW Inc. v.Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 449, 151 L.Ed.2d 339
(2001), for the principle that "courts should construe the language of federal statutes, if possible, so that no word is rendered meaningless or insignificant." Accordingly, we reject defendants' claim that 47 U.S.C. § 227(b)(3) applies only to faxed advertisements sent to private residences.[3]
 {¶ 36} We also dispense with defendants' argument that the TCPA applies only to more than one improperly transmitted facsimile. Again, the statute does not contain any limitation on how many junk faxes are impermissible. To the contrary, the statute expressly refers to "an unsolicited advertisement" and"a violation." Emphasis added. 47 U.S.C. § 227(b)(1)(C) and (b)(3). See Rudgayzer Gratt v. Enine, Inc., (Apr. 14, 2004), Supreme Court of New York, Case Nos. 2002-1700 K C and 2002-1740 K C, 2004 N.Y. Misc. LEXIS 420, (Defendants violated the TCPA by transmitting an unsolicited advertising fax to each plaintiff's fax machine).
 {¶ 37} Defendants' final argument in this case is that the TCPA violates the First Amendment to the U.S. Constitution. We disagree. Other courts have already determined that the TCPA does not unduly burden commercial speech and is therefore not unconstitutional. Rudgayzer Gratt, supra; Missouri ex rel.Nixon v. American Blast Fax, Inc., (8th Cir. 2003) 323 F.3d 649;Destination Ventures, Ltd. v. FCC (9th Cir. 1995),46 F.3d 54.
 {¶ 38} Because none of defendants' arguments is meritorious, we conclude that the trial court erred in granting the motion to dismiss. Accordingly, plaintiff's sole assignment of error is sustained. The judgment of trial court is hereby vacated and this matter reversed and remanded to the trial court for further proceedings consistent with this opinion.
Judgment accordingly.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., O. Calabrese, Jr., J., concur.
[1] Plaintiff's first amended complaint states: "Leonard Merzel d.b.a. Lenders Interactive Services."
[2] Plaintiff asserted similar claims under Ohio law, the Ohio Sales and Consumers Practices Act. We do not address the trial court's dismissal of those state claims, however, because they are not part of this appeal.
[3] We also find defendants' reliance on International Science Technology Institute, Inc. V. Inacom Communications, Inc.
(4th Cir. 1997), 106 F.3d 1146, misplaced. In that case, plaintiff, a corporation, filed suit in federal court complaining about receiving several unsolicited advertisements from defendant on its fax machine. The Court never reached the question of whether plaintiff, a business entity, had standing to sue. The case was dismissed for lack of federal subject-matter jurisdiction.