DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Global Lending Group, Inc., appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellee, Stefano Assoc, Inc. ("Stefano"), received unsolicited advertisements via facsimile from Appellant, Global Lending Group, Inc. ("Global Lending"). On December 30, 2004, at Stefano's direction, its counsel sent a letter to Global Lending advising them that the Telephone Consumer Protection Act of 1991 ("TCPA"), Sections 227(b)(1)(C) and (a)(4), Title 47, prohibited the transmission of unsolicited advertisements via facsimile without "prior express *Page 2 
invitation or permission" from the recipient. In the letter, Stefano's counsel requested that Global Lending inform it as to whether Global Lending was ever granted express permission to transmit the faxes. Global Lending did not respond to the letter and thereafter faxed an additional 11 unsolicited advertisements to Stefano.
 {¶ 3} In all, Stefano received 17 unsolicited faxed advertisements from Global Lending. On August 2, 2006, Stefano filed a complaint seeking damages for the violations of the TCPA.[1] Stefano filed a motion for summary judgment, supported by copies of the faxes it received and an affidavit averring that it had not provided Global Lending with express permission to send such faxes. Global Lending responded in opposition. Thereafter, Global Lending filed a motion for summary judgment, asserting that the TCPA violated the First Amendment to the U.S. Constitution and Article I, Sec. 11 of the Ohio Constitution as well as the Equal Protection Clauses of both Constitutions.
 {¶ 4} On June 4, 2007, the trial court granted Stefano's summary judgment motion and denied Global Lending's motion. The trial court found that Global Lending acted willfully in sending 11 additional faxed advertisements after *Page 3 
receiving a letter notifying it of the unlawful fax transmissions. The trial court awarded Stefano $3000 for the initial six violations and $16,500 for the 11 willful violations. Global Lending timely appealed the judgment of the trial court, raising four assignments of error for our review. For ease of review, we have combined a few of Global Lending's assigned errors.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR STEFANO BECAUSE: (1) THE [TCPA] (47 U.S.C. 227, ET SEQ.), AS APPLIED IN THIS CASE, IS UNCONSTITUTIONAL UNDER THE UNITED STATES AND OHIO CONSTITUTIONS BECAUSE: (A) THE STATUTE DOES NOT PREVENT, BUT IN FACT PERPETUATES THE HARM IT SEEKS TO ALLEVIATE; AND (2) THE DISTINCTION DRAWN BETWEEN MERCHANTS WHO SEND UNSOLICITED FAXES AND THOSE WHO MAKE UNSOLICITED TELEMARKETING CALLS DOES NOT PASS CAREFUL SCRUTINY WHEN THE `OPT-OUT' PROVISION IS NOT USED BY FACSIMILE RECIPIENTS."
 ASSIGNMENT OF ERROR II "FOR THE SAME REASONS SET FORTH IN ASSIGNMENT OF ERROR I, THE TRIAL COURT ERRED WHEN IT DENIED GLOBAL LENDING'S SUMMARY JUDGMENT MOTION."
 {¶ 5} In its first and second assignments of error, Global Lending asserts that the trial court erred in granting summary judgment for Stefano, and in denying its motion for summary judgment, because the TCPA is unconstitutional. Global Lending contends that the statute does not prevent, but instead perpetuates the harm it seeks to alleviate and the distinction the statute draws between merchants *Page 4 
who send unsolicited faxes and those who make unsolicited telemarketing calls does not pass careful scrutiny when the opt-out provision is not used by facsimile recipients. We disagree.
 {¶ 6} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings *Page 5 
but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 9} Stefano alleges that Global Lending failed to timely raise its argument regarding the constitutionality of the TCPA and that it has, therefore, waived the argument for appeal. Assuming, without deciding, that Global Lending properly raised the constitutional issue for our review, we find that this statute is constitutional.
 {¶ 10} "Commercial speech, that which proposes a commercial transaction, is afforded less constitutional protection than other constitutionally guaranteed expression." Suburban Lodges of Am., Inc. v.Columbus Graphics Comm. (2000), 145 Ohio App.3d 6, 11, citing UnitedStates v. Edge Broadcasting Co. (1993), 509 U.S. 418, 426. InCentral Hudson Gas Elec. Corp. v. Pub. Serv. Comm. of New York (1980),447 U.S. 557, the United States Supreme Court, set forth the general four-part test for assessing governmental restrictions on commercial speech. Pursuant to the Central Hudson test, (1) the only commercial speech that receives First Amendment protection is that speech which is truthful and not misleading, (2) a restriction on such commercial speech must seek to implement a substantial governmental interest, (3) the restriction must directly advance the governmental interest at issue and (4) the restriction must not be more extensive than necessary to serve that interest. Central Hudson, 447 U.S. at 564-65. *Page 6 
 {¶ 11} In Missouri ex rel. Nixon v. Am. Blast Fax, Inc. (C.A.8, 2003),323 F.3d 649, the Eighth Circuit Court of Appeals applied theCentral Hudson test in its analysis of the constitutionality of the TCPA. The Eighth Circuit's analysis provides helpful guidance for our review. The court first determined that the governmental interest for creating the restriction was substantial as the intent of the statute was to prevent (1) undesired advertising, (2) the shifting of advertising costs to unwilling consumers and (3) the interference with consumers' use of their fax machines. Id. at 655.
 {¶ 12} Next, the court determined that the restriction on facsimile transmissions directly advanced the governmental interests in protecting the public from bearing the costs of undesired advertising, explaining that
 "[w]hile there is differential treatment in TCPA of unsolicited fax advertisements and live telemarketing calls, the difference is consistent with TCPA's goal to protect members of the public from bearing the costs of unwanted advertising.[2] Thus, TCPA treats live telemarketing solicitations differently if they impose costs on the *Page 7 
recipient. While they are generally permitted unless an individual has registered an objection to being contacted, see 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(e)(2)(iii) (2002), they are prohibited when they result in out of pocket costs for the recipient, see 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls made without consent `to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call'). Because of the cost shifting of fax advertising, it was consistent for Congress to treat unsolicited fax advertisements differently than live telemarketing calls. The distinction in no way undercuts the TCPA goal of protecting the public from unwanted advertising costs." Id at 657.
 {¶ 13} With regard to the distinctions between unsolicited faxes as compared with unsolicited telemarketing calls, the court recognized the differences between the regulations on these two forms of commercial speech, and concluded that the differences were legitimate because of the different costs imposed upon the recipients. Id.
 {¶ 14} Lastly, the court held that the restriction on this type of commercial speech was not more extensive than necessary to further the interests at issue. Id. at 658-59. The court found no merit in the argument that Congress should have adopted an opt-out provision, such as the one which applies to telemarketing, which would be less restrictive than the requirement that advertisers obtain consent prior to sending faxes. Missouri ex rel. Nixon, supra, at 658-59. The court noted that the Supreme Court has held that "`the `least restrictive means test' has no role in the commercial speech context.'" Id., quoting Florida Bar v.Went For It, Inc. (1995), 515 U.S. 618, 632. The court explained that, instead, the *Page 8 
restriction must evidence a "fit" between "the legislature's ends" and the means selected to reach those ends. (Internal citations and quotations omitted.) Id. at 659. Such a restriction does not need to reflect the "least restrictive means", but rather, "a means narrowly tailored to achieve the desired objective." (Internal citations and quotations omitted.) Id. Advertisers have the ability to publicize their products in any number of other legal methods and consequently, the decision to place the burden to obtain consent on the advertiser rather than on the recipient, was reasonable. Id.
 {¶ 15} Global Lending contends that the TCPA does not accomplish its stated purpose if recipients are permitted to collect multiple faxes and increase their damages. It argues that recipients should be required to "opt-out" by notifying the sender that they do not wish to receive the faxes. We disagree. To require recipients to opt-out places an unreasonable burden on them while providing the sender with the opportunity to advertise to the recipient at the recipient's expense. Under the approach advocated by Global Lending, senders would always have the opportunity to transmit at least one free advertisement while recipients would bear the costs and suffer interferences with their fax machines. Missouri ex rel. Nixon, 323 F.3d at 659. We agree with the Eighth Circuit's holding that, "[g]iven the cost shifting and interference imposed by unsolicited commercial faxes and the many alternatives left available to advertisers, TCPA's approach is in proportion to the interest served * * * and is *Page 9 
narrowly tailored to achieve the desired objective." (Internal citations and quotations omitted.) Id.
 {¶ 16} We agree with the Eighth Circuit's decision upholding the TCPA as constitutional in Missouri ex rel. Nixon. Notably, several other federal courts have also upheld the constitutionality of the TCPA as it concerns facsimile transmissions. See Destination Ventures, Ltd. v.FCC (C.A.9, 1995), 46 F.3d 54; Texas v. Am. BlastFax (W.D.Tex.2000),121 F.Supp. 2d 1085; Minnesota ex rel Hatch v. Sunbelt Communs. Mktg.
(D.C.Minn.2002), 282 F.Supp.2d 976. In addition, our sister court, the Eighth District Court of Appeals, also upheld the TCPA as constitutional. See Grady v. Lenders Interactive Servs., 8th Dist. No. 83966, 2004-Ohio-4239. Accordingly, we find no error in the trial court's decision granting summary judgment in favor of Stefano and denying Global Lending's summary judgment motion. Global Lending's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR STEFANO BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER GLOBAL LENDING SENT THE ALLEGED FACSIMILES TO STEFANO AND, IF SO, WHETHER GLOBAL LENDING DID SO WILLFULLY."
 {¶ 17} In its third assignment of error, Global Lending contends that the trial court erred in granting summary judgment for Stefano because genuine issues *Page 10 
of material fact exist as to whether Global Lending sent the alleged facsimiles to Stefano, and, if so, whether Global Lending did so willfully.
 {¶ 18} The record reflects that Global Lending failed to raise this argument below. Global Lending can point to no portion of its argument in its motion for summary judgment or in its response to Stefano's motion for summary judgment wherein it specifically asserted that "genuine issues of material fact" existed as to whether Global Lending sent the alleged faxes. As such, it has failed to preserve this argument for our review. It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal. State v. Byrd (1987), 32 Ohio St.3d 79, 87; Akron ex rel.Christman-Resch v. Akron, 159 Ohio App.3d 673, 2005-Ohio-715, at ¶ 36;Hood v. Rose, 153 Ohio App.3d 199, 2003-Ohio-3268, at ¶ 10. Accordingly, Global Lending's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED STEFANO TREBLE DAMAGES FOR 11 FACSIMILES, EVEN IF SENT BY GLOBAL LENDING, BECAUSE THERE WAS NO EVIDENCE OF ANY WILLFULNESS ON BEHALF OF GLOBAL LENDING."
 {¶ 19} In its fourth assignment of error, Global Lending asserts that the trial court abused its discretion when it awarded Stefano treble damages for 11 facsimiles because there was no evidence of any willfulness on behalf of Global Lending. More specifically, Global Lending asserts that the trial court abused its *Page 11 
discretion in failing to hold a damages hearing to determine whether it engaged in any willfull behavior. We disagree.
 {¶ 20} Absent an abuse of discretion, this Court will not disturb a trial court determination regarding damages. Roberts v. U.S. Fid. Guar. Co. (1996), 75 Ohio St. 3d 630, 634. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 21} Pursuant to the TCP A, a recipient of an unsolicited facsimile advertisement has a cause of action for each unsolicited advertisement received. Sections 227(b)(1)(C) and 227(b)(3), Title 47, U.S. Code. Further, the TCPA sets forth minimum statutory damages of $500 per violation and $1500 for advertisements sent willfully.
 {¶ 22} The Ohio Supreme Court recently set forth the definition of "willfulness" for purposes of an award of treble damages under the TCPA.Charvat v. Ryan et al, ___ Ohio St.3d ___, 2007-Ohio-6833. The Court held that,
 "to establish a willfull violation of the TCPA for an award of treble damages, a plaintiff must prove that the defendant consciously and deliberately committed or omitted an act that violated the statute, irrespective of any intent to violate the law." Id. at ¶ 21. *Page 12 
 {¶ 23} Global Lending has failed to set forth any support for its contention that the trial court was required to hold a damages hearing to determine whether it engaged in willful behavior. Therefore, we decline to further address this contention.
 {¶ 24} The record reflects that Stefano did not expressly authorize Global Lending to transmit the faxes. In its responses to Stefano's discovery requests, Global Lending acknowledged that it did not have express permission to send all the faxes it transmitted. Stefano caused its attorney to send a letter to Global Lending requesting verification that the faxes were solicited. Global Lending failed and/or refused to provide verification that the faxes were solicited. After Stefano's counsel sent this letter, it received an additional 11 faxes from Global Lending.
 {¶ 25} We find that Global Lending's act of transmitting 11 faxes after receiving the letter requesting verification that the faxes were solicited, constitutes conscious and deliberate violations of the TCPA. Whether Global Lending intended to violate the law is of no consequence. See Charvat, supra, at ¶ 21. Accordingly, we find that the trial court did not abuse its discretion in awarding Stefano treble damages for the 11 facsimiles. Global Lending's fourth assignment of error is overruled. *Page 13 
 III. {¶ 26} Global Lending's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant.
 *Page 14 
SLABY, P. J.
CONCURS IN JUDGMENT ONLY
[1] Pursuant to Section 227(b)(3)(B), Title 47, U.S. Code, any person or entity may bring a TCPA action in state court. Reichenbach v.Financial Freedom Ctrs., Inc., 6th Dist. No. L-03-1357, 2004-Ohio-6164, at ¶ 27.
[2] "The distinction made in TCPA between live telemarketing calls and faxes is also consistent with other concerns behind the statutory scheme. Because Congress found telemarketing solicitations made by a person to be less of a nuisance or of an invasion of privacy than artificial or prerecorded calls, see S.Rep. No. 102-178, at 4 n. 4, 5 n. 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972-73, live solicitations are permitted unless an individual has registered an objection in advance, see 47 U.S.C. § 227(c),47 C.F.R. § 64.1200(e)(2)(iii) (2002), while `artificial' calls are prohibited without the recipient's express consent, 47 U.S.C. § 227(b)(1)(B). Artificial or prerecorded messages, like a faxed advertisement, were believed to have heightened intrusiveness because [the solicitor is] unable to `interact with the customer except in preprogrammed ways.'"Missouri ex rel. Nixon, 323 F.3d at 657, fn. 5, quoting S.Rep. No. 102-178, at 4-5, reprinted in 1991 U.S.C.C.A.N. at 1972.