[Cite as *Frederico v. 1795 Spino Dr., L.L.C.*, 2026-Ohio-1380.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CARMEN T. FREDERICO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115468 |
| v. | : | |
| 1795 SPINO DR., LLC, ET AL., | : | |
| Defendants. | : | |
| [Appeal by City of Euclid] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** April 16, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-120812

---

### *Appearances:*

Elk & Elk Co, Ltd., R. Craig McLaughlin, and Antonia
Mysyk, *for appellee*.

Brennan, Manna & Diamond, LLC, and Daniel J. Rudary,
*for appellant* City of Euclid.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant the City of Euclid appeals from the trial court's judgment denying its motion to dismiss. For the reasons that follow, we reverse.

**Factual and Procedural History**

{¶ 2} In July 2025, plaintiff-appellee Carmen Frederico ("Frederico") filed the within complaint against the City of Euclid and defendant 1795 Spino Dr., LLC ("Spino"). The complaint alleges that Spino is a business entity with property located in the City of Euclid and on July 15, 2023, a tree on Spino's property "leaned out into and over [the] [r]oad and created a danger of falling onto the traveled road." Complaint, ¶ 10. Frederico alleges that, according to information on the City of Euclid's website, the city owned the tree and was responsible for maintaining it. The complaint alleged that the city "knew or should have known" "that the tree was dangerously close to the road, had branches that were dangerously leaning out over [the road] and causing an obstruction, was at risk of falling onto the traveled roadway, and was otherwise dangerous and in need of maintenance and/or removal." Complaint, ¶ 14.

{¶ 3} According to the complaint, on July 15, 2023, Frederico was driving on the road, "lawfully in his lane of travel" when the subject tree "fell onto the roof of [his] car, crushed his car, and caused him serious injuries." Complaint, ¶ 15. Frederico attached two sets of photographs to his complaint. The first set of photographs purported to show how the tree looked in September 2022, prior to the incident, and the second set of photographs purported to show the tree on Frederico's vehicle on July 15, 2023.

{¶ 4} Federico asserts a negligence claim against the City of Euclid. He alleges that the city owed duties of care to him, "including . . . the duty to keep public

roads within the City of Euclid open, in repair, and free from obstructions."

Complaint, ¶ 26. According to Frederico:

> Defendant City of Euclid breached those duties of care by negligently failing to inspect the tree; negligently failing to maintain the tree; negligently permitting the tree to exist in close proximity to [the] [r]oad and being an obstruction and hazard; negligently failing to remove the dangerous tree; and by other negligent acts and/or omissions.

Complaint, ¶ 27.

{¶ 5} In lieu of an answer, the City of Euclid filed a Civ.R. 12(B)(6) motion to dismiss on the ground of immunity. Frederico filed a response in opposition. In an August 20, 2025 judgment entry, the trial court summarily denied the city's motion to dismiss. The city now appeals and assigns the following sole assignment of error for our review: "The trial court erred to the prejudice of Defendant-Appellant City of Euclid by denying the City's motion to dismiss based on political subdivision tort immunity."

**Law and Analysis**

{¶ 6} We conduct a de novo review when considering a motion to dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted. *Fried v. Friends of Breakthrough Schools*, 2020-Ohio-4215, ¶ 15 (8th Dist.), citing *Caraballo v. Cleveland Metro. School Dist.*, 2013-Ohio-4919 (8th Dist.). Therefore, we independently review the record and afford no deference to the decision of the trial court. *Fried* at *id.*, citing *Caraballo* at *id.*

{¶ 7} "For a trial court to dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or

her claim that would entitle the plaintiff to relief." *Fried* at ¶ 16, citing *Doe v. Archdiocese of Cincinnati*, 2006-Ohio-2625. "In reviewing a Civ.R. 12(B)(6) motion to dismiss, a court's factual review is confined to the four corners of the complaint." *Fried* at *id.*, citing *Grady v. Lenders Interactive Servs.*, 2004-Ohio-4239 (8th Dist.).

{¶ 8} The City of Euclid's motion to dismiss was based on political subdivision immunity pursuant to R.C. Ch. 2744. "The determination of whether a political subdivision, such as [the city], is entitled to the affirmative defense of immunity involves a three-tier analysis." *Fried* at ¶ 17, citing *Hunt v. Cleveland*, 2016-Ohio-3176 (8th Dist.).

{¶ 9} First, R.C. 2744.02(A)(1) provides a general grant of immunity to political subdivisions: "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." To overcome this general grant of immunity, a plaintiff must show that one of the exceptions in R.C. 2744.02(B) applies. If no exception applies, the political subdivision is immune from liability. If an exception applies, the burden shifts back to the political subdivision to demonstrate that one of the defenses in R.C. 2744.03 applies.

{¶ 10} Frederico does not dispute that the City of Euclid is a political subdivision subject to the general grant of immunity under R.C. 2744.02(A)(1). *See McGraw v. Euclid*, 1996 Ohio App. LEXIS 3102 (8th Dist. July 18, 1996) (recognizing that the City of Euclid is a political subdivision).

{¶ 11} Thus, we next consider the second tier of immunity, that is, whether Frederico can show that an exception to immunity applies so as to withstand the city's motion to dismiss. Frederico contends that he has alleged sufficient facts in his complaint to invoke the exception under R.C. 2744.02(B)(3). R.C. 2744.02(B)(3) provides, in relevant part, the following exception to immunity: "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads . . . ."

{¶ 12} In opposition, the City of Euclid mainly relies on the following cases in support of its contention that Frederico did not allege sufficient facts to establish a R.C. 2744.02(B)(3) exception to immunity: (1) *Howard v. Miami Twp. Fire Div.*, 2008-Ohio-2792; (2) *Estate of Finley v. Cleveland Metroparks*, 2010-Ohio-4013 (8th Dist.); (3) *Laurie v. Cleveland*, 2009-Ohio-869 (8th Dist.); and (4) *Newell v. Brookshire*, 2015-Ohio-4933 (5th Dist.). We consider them in turn.

### Howard v. Miami Twp. Fire Div.

{¶ 13} In *Howard*, the Ohio Supreme Court considered whether ice on a roadway amounted to an "obstruction" as the term is used in R.C. 2744.02(B)(3). The ice formed on the roadway after a township's fire department used water in a training exercise. Later in the day, after the fire department had finished with its training exercise, a teenager was driving on the roadway, lost control of his vehicle, crashed, and died. The teenager's father, as administrator of his estate, sued the township and its fire department, claiming negligence.

{¶ 14} The Court noted that dictionary definitions of "obstruct" and "obstruction" can include "concepts of hindering and impeding — concepts that do not necessarily require a complete blockage." *Id.* at ¶ 22. Nonetheless, the court "conclude[d] that for purposes of R.C. 2744.02(B)(3), an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 29.

{¶ 15} The Court rationalized its conclusion by noting the General Assembly's 2003 amendment to R.C. 2744.02(B)(3). Prior to the amendment, the statute included that political subdivisions were liable for injury or death for their failure to keep public roads "free from nuisance." *Id.* at ¶ 24. The statute in effect now does not contain the nuisance language. The Supreme Court was "persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate act to limit political subdivisions' liability for injuries and death on their roadways." *Id.* at ¶ 26.

{¶ 16} The *Howard* Court illustrated the difference in decisions pre- and post-amendment of R.C. 2744.02(B)(3) by citing to *Mfrs. Natl. Bank of Detroit v. Erie Co., Rd. Comm.*, 63 Ohio St.3d 318 (1992). In *Mfrs. Natl. Bank*, which was decided under the former R.C. 2744.02(B)(3), the court interpreted nuisance "to include 'conditions that directly jeopardize the safety of traffic on the highway' even if they did not appear on the roadway itself." *Howard* at ¶ 27, quoting *Mfrs. Natl. Bank* at 322-323.

{¶ 17} The *Howard* Court also noted its pre-amendment of R.C. 2744.02(B)(3) decision in *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506 (2000). In *Harp*, the Court held that "a defective tree limb threatening to fall on a public roadway, but not actually on the roadway, could constitute a nuisance under R.C. 2744.02(B)(3) and that a political subdivision's duty of care extended beyond merely removing obstructions from public roads." *Id.* at 512.

{¶ 18} But because the legislature amended R.C. 2744.02(B)(3), and in doing so eliminated the nuisance language, the Supreme Court of Ohio concluded that "[t]he General Assembly . . . used the word 'obstructions' in a deliberate effort to impose a condition more demanding than a showing of a 'nuisance' in order for a plaintiff to establish an exception to immunity." *Howard* at ¶ 29.

### *Estate of Finley v. Cleveland Metroparks*

{¶ 19} In *Estate of Finley*, 2010-Ohio-4013 (8th Dist.), a husband and wife were riding through the Cleveland Metroparks on a motorcycle when a tree fell onto the roadway. The couple's motorcycle struck the tree; the husband sustained injuries and the wife died. The husband and the wife's estate filed an action against the city where the park was located and the Metroparks.[1]

{¶ 20} The plaintiffs presented expert testimony that the tree had been decaying for five to ten years before it fell and that it would have been noticeably dead. Thus, regarding their claim against the Metroparks, the plaintiffs contended

---

[1] This court held that the plaintiffs' claim against the city was barred by the statute of limitations. *See Estate of Finely* at ¶ 22.

that, at the time the tree fell, the Metroparks had constructive notice that it posed a hazard. But citing to *Howard*, this court found that a showing of more than a nuisance was needed to impose liability on a political subdivision. The *Estate of Finley* panel noted that "[a]lthough there is little debate that the fallen tree . . . became an obstruction in the roadway when it fell," under *Howard*, that was insufficient to establish an exception to immunity under R.C. 2744.02(B)(3), and there was no evidence that the Metroparks had notice of the obstruction. *Estate of Finley* at ¶ 41.

### *Laurie v. Cleveland*

{¶ 21} In *Laurie*, 2009-Ohio-869 (8th Dist.), the plaintiff was injured after being thrown from a motorcycle she was riding on as a passenger in the City of Cleveland; the accident occurred when the motorcycle and a van backing out of a driveway collided. The plaintiff sued the city, among others. Her claim against the city was that the city's trees that lined the street where the accident occurred blocked the views of the drivers of the motorcycle and van. The plaintiff maintained that the trees were an obstruction as contemplated by R.C. 2744.02(B)(3). The city denied liability and asserted immunity.

{¶ 22} Citing *Howard*, 2008-Ohio-2792, this court agreed with the city. Specifically, the *Laurie* panel noted that the plaintiff did not contend that "the tree limbs were actually blocking or clogging the road in some way. She does not argue that they were hanging out onto the road itself, causing motorists to drive around them, or that they were in any way physically obstructing the road." *Id.* at ¶ 53.

Rather, the panel found that the plaintiff's claim about the tree was, at best, that it constituted a visual obstruction. The court held that a visual obstruction is not an obstruction for the purpose of imposing liability under R.C. 2744.02(B)(3).

### *Newell v. Brookshire*

{¶ 23} In *Newell*, 2015-Ohio-4933 (5th Dist.), the plaintiff was injured when a tree split and fell on top of him while he was driving a motorcycle in the City of Canton. The plaintiff sued the city, among others. His claim against the city was that it was negligent in failing to inspect and remove the tree.

{¶ 24} Citing to *Howard*, 2008-Ohio-2792, the Fifth Appellate District found that no liability could be imputed to the City of Canton.

> A thing or condition that has the potential or threat to impede the use of the roadway is not an "obstruction" for purposes of R.C. 2744.02(B)(3). In this case, there is no dispute that, at the time of the accident, the tree was not in the roadway. Rather, it fell on appellant as he was riding his motorcycle. Accordingly, the exception contained in R.C. 2744.02(B)(3) does not apply to abrogate Canton's general grant of immunity.

*Newell* at ¶ 40.

### Applying *Howard*, *Estate of Finley*, *Laurie*, and *Newell* to this Case

{¶ 25} In light of the Supreme Court's decision in *Howard*, and this court and the Fifth Appellate District's decisions following *Howard*, we find that the trial court erred by denying the City of Euclid's motion to dismiss. Taking Frederico's allegations as true, as we are required to do, the tree that fell on his vehicle did not constitute an obstruction under the authority of *Howard* and its progeny. Frederico

did not allege that the tree was already on the roadway at the time of the accident, which would have been necessary to constitute an obstruction under R.C. 2744.02(B)(3) and *Howard.*

{¶ 26} We address three other tangential issues Frederico raises. First, he maintains that we should not consider the pictures he attached to his complaint and, rather, should limit our consideration to the four corners of the written complaint. Although Frederico's position is puzzling because he provided the pictures, he is correct that attachments to complaints are generally reserved for accounts or written instruments supporting a claim and affidavits of merit for medical, dental, optometric, and chiropractic liability claims. *See* Civ.R. 10(D). Thus, we have not considered the pictures in reaching our decision.

{¶ 27} Second, Frederico notes that *Howard*, *Estate of Finley*, *Laurie*, and *Newell* were all reviews of summary-judgment motions as opposed to a motion dismiss, which is implicated here. He is correct, but that does not change our decision. Our decision is made after applying the black-letter law set forth by the Ohio Supreme Court in *Howard* to the allegations made in Frederico's complaint. We are duty-bound to follow *Howard*. This court has previously noted:

> We are cognizant of the fact that the amendment of R.C. 2744.02(B)(3) from "nuisance" to "obstruction" means that a political subdivision will probably never be found to be on notice of an obstruction that occurs simultaneously with an accident; thereby making it impossible for a plaintiff to recover in these types of situations. As the Ohio Supreme Court noted in *Howard*, "the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id.* at 5.

*Estate of Finely*, 2010-Ohio-4013, at ¶ 41, fn. 4 (8th Dist.).

{¶ 28} Moreover, as the city notes, this court has determined that a defendant is entitled to a judgment on a Civ.R. 12(B)(6) based on immunity numerous times. *See, e.g., Mohammad v. Seven Hills*, 2025-Ohio-4673 (8th Dist.); *Soler v. Cleveland Metro. School Dist.*, 2025-Ohio-2151 (8th Dist.); and *Bykova v. Cleveland*, 2025-Ohio-3285 (8th Dist.).

{¶ 29} Finally, Frederico asks that, if we find that his complaint fails as a matter of law, we remand the case to the trial court to instruct it to allow him to file an amended complaint. He contends that his request is proper because, although he did not file a motion to amend his complaint, he sought that remedy in his brief in opposition to the city's motion to dismiss. Under Civ.R. 15(A), "A party may amend its pleading once as a matter of course . . . within twenty-eight days after service of a motion under Civ.R. 12(B) . . . ." After the City of Euclid filed its motion to dismiss, Frederico was on notice of the shortcomings of his complaint. The prudent course of action would have been to file an amended complaint along with his opposition to the city's motion, or if need be, seek leave to file an amended complaint.

{¶ 30} For the reasons discussed herein, the trial court erred by not granting the City of Euclid's motion to dismiss.

{¶ 31} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR