**SHERWIN WILLIAMS COMPANY, Appellee,**

**v.**

**DAYTON FREIGHT LINES et al., Appellants.**

[Cite as *Sherwin Williams Co. v. Dayton Freight Lines,* 161 Ohio App.3d 444, 2005-Ohio-2773.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20651.

Decided May 27, 2005.

Thomas E. Dover and Timothy P. Roth, for appellee.

James W. Gustin, for appellant Lewisburg.

Steven E. Bacon and Robert M. O'Neil, for appellant Dayton Freight Lines.

Patrick J. Janis and Lisa A. Hesse, for appellants Gainey Transportation Services, Inc., Gainey Insurance Services, Inc., Richard D. Estes, and Heidi L. Boyd.

Richard M. Hunt and Kevin M. Hunt, for appellants Richard D. Estes and Heidi L. Boyd.

Robert A. Burke, for appellants Ronald Tracy and Candace Tracy.

WOLFF, Judge.

{¶ 1} Dayton Freight Lines, Inc. ("Dayton Freight"), Gainey Transportation Services, Inc. ("Gainey"), Richard D. Estes, Heidi L. Boyd, and Ronald and

Candace Tracy appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the village of Lewisburg.

{¶ 2} The events that gave rise to this lawsuit are as follows:

{¶ 3} On February 7, 2000, Lewisburg employees were burning discarded Christmas trees and other yard and lumber waste in an area behind the village's water plant. The water plant was less than one-half mile north of Interstate 70. The burning was performed under a permit, which required that (1) only foliage and wood products be burned, (2) the wood be clean and dry, (3) burning piles be no larger than five feet by five feet, and (4) all fires be extinguished by 4:00 p.m. The burning occurred throughout the day, with additional wood fed into the fires by hand or backhoe.

{¶ 4} Midafternoon, a supervisor told the employee who had been primarily responsible for the burning to extinguish the fire. The employee did so by pushing all of the burning materials together with the backhoe and covering the pile with dirt and mud. No water was used. The village employees then left the water plant. Although the supervisor returned to the plant later that night, he did not check the burn site.

{¶ 5} Around 11:00 p.m., a multicollision accident occurred on eastbound Interstate 70, south of the water plant and outside the limits of Lewisburg. Twelve or more cars and tractor-trailers were involved in the accident, and numerous emergency departments from Lewisburg and elsewhere responded. Firefighters reported seeing behind the water plant large burn piles that produced smoke, which stayed low to the ground and traveled south toward the interstate. The drivers involved in the accident and some of those who responded to the scene described blackout-like conditions on the interstate caused by the smoke and fog.

{¶ 6} Numerous claims, third-party claims, counterclaims, and cross-claims related to the accident were filed in Preble and Montgomery Counties and in the United States District Court for the Southern District of Ohio. The Montgomery and Preble County cases were consolidated for purposes of discovery and for trial of liability issues.

{¶ 7} On April 21, 2004, Lewisburg filed a motion for summary judgment, asserting its immunity as a political subdivision. The appellants herein opposed the motion. On August 6, 2004, the trial court granted summary judgment to Lewisburg, concluding that the village was immune from liability under the version of R.C. Chapter 2744 in effect at the time of the accident. It also certified its decision under Civ.R. 54(B). The appellants raise numerous assignments of error on appeal.

{¶ 8} As a preliminary matter, we will briefly discuss the statutory framework setting forth the immunity of political subdivisions and the exceptions thereto. We will then turn to the assignments of error.

{¶ 9} The Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744, requires a three-tiered analysis to determine whether a political subdivision should be immune from liability. Pursuant to R.C. 2744.02(A)(1), the general rule is that political subdivisions are not liable in damages when performing either a governmental or a proprietary function. *Hubbard v. Canton City Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543. Once immunity is established, the second tier of the analysis is whether one of the exceptions to immunity set forth at R.C. 2744.02(B)(1) through (5) applies. Third, immunity can be reinstated if the political subdivision can successfully show that one of the defenses contained in R.C. 2744.03 applies.

{¶ 10} There is no dispute in this case that Lewisburg is a political subdivision or that it was engaged in a governmental function in setting the fire at the water plant to dispose of Christmas trees and other waste. There is also no dispute that the fire was located within Lewisburg and that the accident on Interstate 70 was not. Further, for the purposes of summary judgment, the parties seem to agree that there was a genuine issue of material fact as to whether the Lewisburg employees acted negligently in failing to extinguish the fire. The disputes in this case center on whether an exception to immunity applied pursuant to R.C. 2744.02(B) and, if such an exception applied, whether Lewisburg was nonetheless immune from liability because it had established one of the defenses set forth at R.C. 2744.03.

{¶ 11} The arguments raised by the appellants in their briefs overlap in some respects, but they are also distinct in some respects. We will use the assignments of error of Dayton Freight as a starting point and insert discussions of the additional arguments of the other appellants where appropriate. Dayton Freight's first assignment of error is as follows:

The trial court erred in holding that the exception to political subdivision immunity set forth at O.R.C. § 2744.02(B)(3) does not apply to the village of Lewisburg where village employees created a nuisance on a public ground which subsequently obstructed visibility on nearby Interstate 70, resulting in injury, death and loss to person and property.

{¶ 12} The trial court concluded that "Lewisburg ha[d] no duty under R.C. 2744.02(B)(3) to repair or protect others from a nuisance that exist[ed] on an interstate highway regardless of where the source of the nuisance [was] located." Dayton Freight contends that a political subdivision's liability is determined by whether it had control over or created the nuisance, rather than by the location where the injury or harm occurred. It supports this argument by citing cases

that have held that a political subdivision is not liable for an injury caused by a nuisance over which it had no control. See *Ruwe v. Bd. of Trustees of Springfield Twp.* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957; *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 30 OBR 295, 507 N.E.2d 352. See, also, *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702. Dayton Freight argues that the reverse must also be true, i.e., that if the political subdivision *does* have control over the nuisance, it *is* liable for injuries caused thereby, even if those injuries occur outside of the boundaries of the political subdivision.

{¶ 13} At the time of the accident, R.C. 2744.02(B)(3) [1] provided: "[P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, * * * or public grounds within the political subdivision open, in repair, and free from nuisance * * *."

{¶ 14} The Supreme Court interpreted former R.C. 2744.02(B)(3) in conjunction with the former R.C. 723.01, a similar statute that required municipal corporations to keep public highways, streets, and avenues "open, in repair, and free from nuisance." *Mfr's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 321, 587 N.E.2d 819. The court has stated that the focus of the duty imposed by these statutes "should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled [sic] portion of the road." Id. at 322, 587 N.E.2d 819. However, the Supreme Court has also held that the duty imposed by R.C. 723.01, and implicitly by R.C. 2744.02(B)(3), refers to the condition of highways and streets *within* the political subdivision, refusing to place the additional burden of inspecting and maintaining the highways and streets of neighboring jurisdictions on a political subdivision. *Ruwe,* 29 Ohio St.3d at 61, 29 OBR 441, 505 N.E.2d 957 (Muffler exhaust system that had lain in the road near township boundary for at least 24 hours caused serious accident and injuries when catapulted into the air; court held that political subdivision cannot be charged with constructive notice of nuisance that exists outside the corporate limits of the subdivision). See, also, *Mitchell,* 30 Ohio St.3d at 95, 30 OBR 295, 507 N.E.2d 352 ("R.C. 723.01

---

1. The trial court accurately discussed the history of R.C. Chapter 2744 as follows: "Under Ohio Senate Bill No. 106 amending R.C. 2744.02 and 2744.03, any cause of action prior to the effective date of the bill in 2003 is governed by the law in effect when the cause of action accrued. Prior to the February 7, 2000, motor vehicle accident, the two most recent versions of R.C. 2744.02 and R.C. 2744.03 were enacted in House Bill 350, effective January 27, 1997, and House Bill 215, effective June 30, 1997. However, these two versions of the statute were invalidated by the Ohio Supreme Court's decision in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 1999-Ohio-123, 715 N.E.2d 1062, and *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 2001-Ohio-249, 743 N.E.2d 901. Therefore, the pre-House Bill 350 versions of R.C. 2744.02 and R.C. 2744.03 will be applied to the case *sub judice.*"

does not create a duty requiring a municipality to protect individuals from or warn them of dangers existing on property which is beyond its corporate limits or control").

{¶ 15} Dayton Freight urges that a different standard must apply when the nuisance or hazard in question has been created by and is within the control of the political subdivision. The Supreme Court has not addressed this particular circumstance. The trial court relied on a case from the Twelfth Appellate District, *Kareth v. Toyota Motor Sales* (Sept. 28, 1998), Clermont App. No. CA98–01–011, 1998 WL 667845, in concluding that a political subdivision is not liable for a nuisance that exists on a highway outside its jurisdiction, even if the cause of the nuisance is an activity inside its jurisdiction that was created by the political subdivision. Kareth involved a fatal single-car accident on State Route 133 near the intersection of State Route 133 and Twin Bridges Road. The county commissioners had been responsible for the maintenance of Twin Bridges Road, whereas the state had been responsible for the maintenance of State Route 133. The decedent's family alleged that Twin Bridges Road was maintained in such a way that surface water drained onto and flowed across State Route 133, creating a hazardous condition that caused the accident. The county commissioners asserted that they were immune from liability and moved for judgment on the pleadings, which was granted by the trial court. The court of appeals affirmed, concluding that "since a county does not have any control over state highways, the Commissioners do not have a duty under R.C. 2744.02(B)(3) to repair or protect others from a nuisance that exists on a state highway regardless of where the source of the nuisance is located." *Kareth*, supra, citing *Mitchell*, 30 Ohio St.3d 92, 30 OBR 295, 507 N.E.2d 352, paragraph one of the syllabus, and *Carney v. McAfee* (1988), 35 Ohio St.3d 52, 517 N.E.2d 1374, syllabus.

{¶ 16} Courts give words in a statute their plain and ordinary meaning unless legislative intent indicates a different meaning. *Hubbard v. Canton City Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 13. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." Id. at ¶ 14. The former R.C. 2744.02(B)(3) made political subdivisions liable for injury, death, or loss to persons or property "caused by their failure to keep * * * public grounds within the political subdivision * * * free from nuisance * * *." This provision is not ambiguous, and we do not read it to require that the injury, death, or loss necessarily occur within the political subdivision, so long as the nuisance or disrepair at the root thereof was located on "the public roads, highways, streets, avenues, alleys, sidewalks, bridges, * * * or public grounds within the political subdivision." Thus, the language of this statute seems to apply to the facts in this case, where the fire

that created the hazard was maintained on public grounds within the political subdivision. Therefore, we decline to follow *Kareth*, and we conclude that Lewisburg is subject to liability pursuant to the exception to immunity set forth at R.C. 2744.02(B)(3) insofar as there is a genuine issue of material fact as to whether it had created a nuisance on public grounds within Lewisburg that caused injury, death, and loss.

{¶ 17} Gainey also argues that, "as an occupier of abutting property, [Lewisburg] breached its duty not to create nuisances affecting travel on the roadway through the use of its land." It cites *Mfr's Natl. Bank*, 63 Ohio St.3d 318, 587 N.E.2d 819, in support of this argument. In *Mfr's Natl. Bank*, a landowner planted crops in the highway right-of-way near an intersection, obstructing the vision of drivers who were attempting to cross or turn onto the highway. The Supreme Court held that both the political subdivision and the landowner could be held liable for this hazard: the political subdivision because the permanent nature of the "nuisance" rendered portions of the highway unsafe for usual and ordinary travel, and the landowner because his improper use of the right-of-way was inconsistent with the highway purpose and created an unreasonable hazard.

{¶ 18} Gainey contends that, on the authority of *Mfr's Natl. Bank*, Lewisburg should be held liable not only as a political subdivision, but as a private landowner that created a hazard on an adjoining highway. Having concluded that Lewisburg can be held liable pursuant to R.C. 2744.02(B)(3), we decline to address Gainey's argument that Lewisburg should be held liable as a private landowner.

{¶ 19} Gainey also cites *Kettering ex rel. Moser v. Kettering* (Jan. 29, 1988), Montgomery App. No. 10596, 1988 WL 10121, for the proposition that "a person off the public grounds is entitled to recovery for damages caused by a nuisance that is maintained on the public grounds," and it criticizes the trial court's effort to distinguish *Moser*. *Moser* involved a lawsuit by homeowners whose property abutted a city park, the city had failed to enforce its own noise and hours restrictions, and the noise allegedly amounted to a nuisance for those who lived in proximity to the park. Thus, the case involved the city's duty to those in proximity to, but not on, public property, although all of the property at issue in that case was within the city limits. We held, "It is well within the import of R.C. 723.01 and 2744.02(B)(3) to assume that a person off of the public grounds is entitled to recovery for damages caused by a nuisance that is maintained on the public grounds. * * * There is no language in the statute restricting standing under that statute to the persons within and using the park." Id.

{¶ 20} The trial court distinguished *Moser* because we had distinguished its facts from the facts in *Mitchell*, where a city was found to be immune from liability for a nuisance that had existed within the city limits but had created a hazard outside of the city limits. However, the nuisance in *Mitchell* was not

created by the city, and the city's responsibility for the creation of the nuisance is a significant factor in our analysis of Lewisburg's potential liability. Thus, although *Moser* did not involve any property outside of the city limits, we agree with Gainey that the reasoning therein supports our conclusion that a political subdivision can be liable for a nuisance that exists on public property even if the injury does not occur on land within the political subdivision's control.

{¶ 21} In sum, we find that the exception to political subdivision immunity set forth at R.C. 2744.02(B)(3) applies under the facts of this case. Dayton Freight's first assignment of error and the other parties' assignments related to R.C. 2744.02(B)(3) are sustained.

{¶ 22} Dayton Freight's second assignment of error states:

The trial court erred in holding that the exception to political subdivision immunity set forth at O.R.C. § 2744.02(B)(4) does not apply to the village of Lewisburg where village employees negligently attempted to extinguish a fire within or on the grounds of buildings used in connection with the performance of a governmental function when said negligence resulted in a cloud of smoke and fog which obstructed visibility on nearby Interstate 70, resulting in injury, death or loss to persons or property.

{¶ 23} Dayton Freight argues that Lewisburg is liable pursuant to R.C. 2744.02(B)(4), which provides, "[P]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *." Dayton Freight claims that the trial court erred in concluding that R.C. 2744.02(B)(4) imposes liability only for injuries that occur on public grounds.

{¶ 24} As stated supra, courts give words in a statute their plain and ordinary meaning unless legislative intent indicates a different meaning. *Hubbard v. Canton City Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 13. In our view, the structure of R.C. 2744.02(B)(4) clearly sets forth two requirements for the imposition of liability for an injury, death, or loss: (1) the injury, death, or loss was caused by employee negligence and (2) the injury, death, or loss occurred within or on grounds of buildings that are used in connection with the performance of a governmental function. Because no evidence was offered in this case to support the latter requirement, the exception set forth at R.C. 2744.02(B)(4) did not apply.

{¶ 25} Dayton Freight would have us read R.C. 2744.02(B)(4) as being satisfied if the negligence, rather than the injury, occurred on the public grounds. We simply do not believe that the provision can be interpreted in this manner. Both

clauses refer to the injury, death, or loss; the second clause does not refer to the first clause, as Dayton Freight would read it.

{¶ 26} Moreover, based on the rules of statutory construction, the Supreme Court has refused to recast R.C. 2744.02(B)(4) so that the subsection may accommodate some unstated meaning or purpose. *Hubbard* at ¶ 14. In *Hubbard*, the political subdivision asked the court to read R.C. 2744.02(B)(4) more narrowly, i.e., as applying only to injuries occurring on the public grounds *that were due to physical defects* within or on those grounds. This argument was based on subsequent legislation that evinced an intent to so limit the provision but which had been held unconstitutional on other grounds. While acknowledging that the General Assembly had attempted to change the language of R.C. 2744.02(B)(4), the court refused to judicially rewrite the subsection, concluding that it was "bound to apply the words of the law in effect at the time the alleged negligent acts occurred." Id. at ¶ 17. For the same reason, we must interpret R.C. 2744.02(B)(4) as requiring the injury, death, or loss to occur within or on public grounds. Although a policy argument could be made that R.C. 2744.02(B)(4) should not be written so narrowly, such an argument must be addressed to the legislature.

{¶ 27} Dayton Freight relies on two cases in support of its argument. *Beck v. Adam Wholesalers of Toledo, Inc.* (Sept. 28, 2001), Sandusky App. No. S–00–038, 2001 WL 1155820, involved a school playground, one end of which was delineated by a faded painted yellow line on an asphalt surface. The students were not supposed to cross the line while on recess at the playground. A six-year-old was hit by a semi truck during recess when he ran past the yellow line and onto an adjacent road while chasing a ball. In response to the political subdivision's argument that R.C. 2744.02(B)(4) did not apply because the injury did not occur on school grounds, the appellate court concluded:

{¶ 28} "Under the specific facts of this case, particularly focusing on the continuous chain of events which culminated in the accident, we reject such a narrow interpretation of the statute. We agree with [plaintiff-]appellant that the foreseeability and proximity aspects of this particular case cannot be ignored. Denying review under R.C. 2744.02(B)(4) based upon a matter of inches leads to an absurd result." Id.

{¶ 29} While we do not necessarily disagree with the reasoning in *Beck*, we decline to follow that case here. The injury, death, and loss that occurred on Interstate 70 in this case was not nearly as foreseeable and proximate to the alleged nuisance as in *Beck*. Moreover, while *Beck* bends the statutory rule that the injury must occur on governmental property, it does so by "inches." It does not hold that, in general, the injuries contemplated by R.C. 2744.02(B)(4) need not occur on governmental property.

{¶ 30} Dayton Freight also relies on the following statement from *Hubbard* in support of its argument that the negligence, rather than the injury, may occur on governmental property to invoke the exception set forth at R.C. 2744.02(B)(4):

{¶ 31} "Since the injuries claimed by plaintiffs were caused by negligence occurring on the grounds of a building used in connection with a governmental function, R.C. 2744.02(B)(4) applies and the board is not immune from liability." *Hubbard v. Canton City Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 18

{¶ 32} We have previously rejected Dayton Freight's proposed interpretation of this passage from *Hubbard.* In *Kennerly v. Montgomery Cty. Bd. of Cmmrs.*, 158 Ohio App.3d 271, 2004-Ohio-4258, 814 N.E.2d 1252, the plaintiff similarly relied on this statement out of context. In response, we stated:

{¶ 33} "Standing alone, that passage might be read to indicate that the statutory exception to immunity turns on where the negligent act occurs. * * * We do not read *Hubbard* to hold that application of R.C. 2744.02(B)(4) turns on where the negligent act occurred. * * * [R]egardless of where the negligent act takes place, neither *Hubbard* nor a plain-meaning construction of R.C. 2744.02(B)(4) permits its application to an injury, death, or loss that occurs anywhere other than within or on the grounds of a building where a governmental function from which the harm proximately resulted is performed." Id. at ¶ 18–19.

{¶ 34} Dayton Freight's second assignment of error and the other assignments related to R.C. 2744.02(B)(4) are overruled.

{¶ 35} The briefs of Gainey and the Tracys raise one additional issue, which we will treat as a third assignment of error. It is stated in Gainey's brief as follows:

The 'discretionary defenses' set forth in Ohio Rev.Code § 2744.03(A)(3) and (5) do not provide immunity where the act of the political subdivision constitutes a nuisance under Ohio Rev.Code § 2744.02(B)(3) and where the facts suggest willfulness and wantonness if any discretion was exercised.

{¶ 36} The trial court noted that R.C. 2744.03 lists defenses to political-subdivision liability that may apply even if an exception to immunity has been established under R.C. 2744.02. However, the court did not address R.C. 2744.03 because it found that none of the exceptions to immunity under R.C. 2744.02 had been established. Insofar as we have found that the exception set forth at R.C. 2744.02(B)(3) does apply, we will remand this matter for the trial court to consider the applicability of any defenses set forth under R.C. 2744.03.

{¶ 37} The third assignment of error is overruled.

{¶ 38} The judgment of the trial court will be affirmed in part and reversed in part. The matter will be remanded to the trial court for further consideration of the defenses to liability set forth at R.C. 2744.03.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BROGAN, P.J., and YOUNG, J., concur.