[Cite as *Fried, Admin. v. Friends of Breakthrough Schools*, 2020-Ohio-4215.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ADAM FRIED,                                     :
ADMINISTRATOR, ET AL.,

                                                :

      Plaintiffs-Appellees,

                                                :               No. 108766

      v.

                                                :

FRIENDS OF BREAKTHROUGH
SCHOOLS, ET AL.,                                :

      Defendants-Appellants.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 27, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910184

---

### *Appearances:*

Sherman Boseman Legal Group, L.L.C., Bradley A. Sherman, F. Allen Boseman, Jr., and Ashley M. Fuchs; Burkes Law, L.L.C., and John F. Burke, III, *for appellees.*

Carpenter Lipps & Leland, L.L.P., Michael H. Carpenter, Joel E. Sechler, and Joseph B. Kunkel, *for appellants.*

RAYMOND C. HEADEN, J.:

**{¶ 1}** Defendant-appellant Entrepreneurship Preparatory School Woodland Hills ("EPrep") appeals from the trial court's denial of its motion to dismiss plaintiffs-appellees' amended complaint. For the reasons that follow, we reverse and remand.

## Procedural and Substantive History

**{¶ 2}** On January 25, 2019, plaintiffs-appellees Adam Fried, the administrator of the estate of Alianna DeFreeze ("Alianna"), Donnesha Cooper ("Cooper"), and Damon DeFreeze ("DeFreeze") (collectively, "Appellees") filed a complaint against EPrep and additional defendants Friends of Breakthrough Schools, Cleveland Metropolitan School District, Lynesha Richardson, Christopher Whitaker ("Whitaker"), the city of Cleveland, and Lavontay D. McKenzie. Appellees brought claims for wrongful death, survival, negligence, fraudulent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, nuisance, and spoliation of evidence.

**{¶ 3}** On January 26, 2017, while Alianna was enrolled as a student at EPrep, she was abducted and murdered by Whitaker on her way to school. Appellees alleged in their complaint that EPrep did not notify Cooper or DeFreeze of Alianna's absence from school until Cooper called EPrep that afternoon.

**{¶ 4}** On March 15, 2019, Appellees filed an amended complaint (the "First Amended Complaint").

**{¶ 5}** On March 29, 2019, EPrep filed a motion to dismiss the First Amended Complaint for failing to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). EPrep argued that it is immune from liability by virtue of its status as a political subdivision pursuant to R.C. Chapter 2744.

**{¶ 6}** On April 19, 2019, Appellees filed a brief in opposition to EPrep's motion to dismiss, arguing that its conduct falls within two exceptions to political subdivision immunity, and that the parties should be afforded the opportunity to engage in discovery to determine whether the exceptions applied.

**{¶ 7}** On June 7, 2019, the court denied EPrep's motion to dismiss. The court reasoned that "given the intricacies of the notification system," additional discovery was necessary to determine whether the conduct involved was a governmental function for purposes of political subdivision immunity, citing this court's analysis in *Caraballo v. Cleveland Metro. School Dist.*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919.

**{¶ 8}** EPrep appealed, presenting two assignments of error for our review.

**{¶ 9}** On July 2, 2019, Appellees filed a Second Amended Complaint. On July 31, 2019, Appellees filed a Third Amended Complaint.

**Law and Analysis**

**{¶ 10}** In its first assignment of error, EPrep argues that the trial court erred as a matter of law by failing to dismiss Counts 7, 8, and 11 of the Amended Complaint because the immunities granted under R.C. 2744.02 et seq. do not allow such intentional tort claims to be brought against political subdivisions. Similarly, in its

second assignment of error, EPrep argues that the trial court erred as a matter of law by failing to dismiss Counts 1, 2, 3, and 9 of the Amended Complaint because the immunities granted under R.C. 2744.02 et seq. do not allow such negligence claims to be brought against political subdivisions. In denying EPrep's motion to dismiss, the trial court did not distinguish between the intentional tort and negligence claims.

{¶ 11} As an initial matter, Appellees submit that EPrep's appeal is moot because EPrep's motion to dismiss was premised on the allegations in the First Amended Complaint, and since the date of the trial court's denial of the motion to dismiss, Appellees filed a Second and Third Amended Complaint.

{¶ 12} It is well-settled that an amended pleading supersedes the original pleading. *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, 939 N.E.2d 928, ¶ 32 (10th Dist.). In the rare case, however, where an "amended complaint is 'substantially identical to the original complaint,' [* * *] a properly filed amended complaint may be insufficient to moot the motion to dismiss." *Mandali v. Clark*, S.D.Ohio No. 2:13-cv-1210, 2014 U.S. Dist. LEXIS 143850, 4 (Oct. 9, 2014), quoting *Greater Cincinnati Coalition for the Homeless v. Cincinnati*, S.D.Ohio No. 08-cv-603, 2009 U.S. Dist. LEXIS 84474, 9 (Aug. 7, 2009). Where a complaint is amended so that it only addresses a discrete issue, it may not moot the underlying motion to dismiss. *Greater Cincinnati Coalition for the Homeless* at *9, citing *In re GI Holdings*, 122 Fed. Appx. 554, 556 (3d Cir.2004).

{¶ 13} Upon review of the First, Second, and Third Amended Complaints, we find them to be substantially identical, particularly with respect to their allegations against EPrep. In the First Amended Complaint, Appellees named multiple defendants, including John Doe Companies 1 through 10, and alleged that the companies provided communication services to EPrep relevant to the parental notification system. In the Second Amended Complaint, Appellees named numerous technology companies and alleged that these specific companies were responsible for creating, maintaining, or supplying to EPrep the technology services or products related to the parental notification system. The Second and Third Amended Complaints went on to make various allegations about the operations of the technology companies as they related to the parental notification system.

{¶ 14} The allegations against EPrep are substantially identical across the First, Second, and Third Amended Complaints. Further, the changes to the complaint relate to other defendants and thus have no bearing on the issue of EPrep's immunity at the heart of this appeal, as will be discussed more thoroughly below. Therefore, because the subsequent pleadings are substantially identical to the pleading on which EPrep's motion to dismiss was based, EPrep's appeal is not moot.

## I. Political Subdivision Immunity

{¶ 15} We apply a de novo standard of review to a decision on a motion to dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted. *Caraballo*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919, at ¶ 6, citing

*Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. Therefore, we independently review the record and afford no deference to the trial court's decision. *Caraballo*, citing *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 13.

{¶ 16} For a trial court to dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975). In reviewing a Civ.R. 12(B)(6) motion to dismiss, a court's factual review is confined to the four corners of the complaint. *Grady v. Lenders Interactive Servs.*, 8th Dist. Cuyahoga No. 83966, 2004-Ohio-4239, ¶ 6.

{¶ 17} Here, EPrep's motion to dismiss was based on political subdivision immunity pursuant to R.C. Chapter 2744. The determination of whether a political subdivision, such as EPrep, is entitled to the affirmative defense of immunity involves a three-tier analysis. *Hunt v. Cleveland*, 8th Dist. Cuyahoga No. 103468, 2016-Ohio-3176, ¶ 14, citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. First, R.C. 2744.02(A)(1) provides a general grant of immunity to political subdivisions, stating that they are

> not liable in damages in a civil action for injury, death, or loss to person
> or property allegedly caused by any act or omission of the political

subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

R.C. 2744.02(A)(1). To overcome this immunity, a plaintiff must show that one of the exceptions in R.C. 2744.02(B) applies. *Id.* If no exception applies, the political subdivision is immune from liability. If an exception applies, the burden shifts back to the political subdivision to demonstrate that one of the defenses in R.C. 2744.03 applies.

{¶ 18} Here, there is no dispute that EPrep is a "political subdivision" pursuant to R.C. 2744.02(A)(1). Therefore, our analysis for both of EPrep's assignments of error will begin with the second tier of the three-tier analysis and require us to determine whether Appellees have established that an exception to immunity applies.

## II.  Intentional Tort Claims

{¶ 19} In its first assignment of error, EPrep argues that the trial court erred as a matter of law by failing to dismiss Appellees' intentional tort claims of fraudulent misrepresentation, intentional infliction of emotional distress, and spoliation of evidence because the immunities granted under R.C. 2744.01 et seq. do not allow intentional tort claims to be brought against political subdivisions.

{¶ 20} In denying EPrep's motion to dismiss, the trial court failed to distinguish between Appellees' intentional tort claims and their negligence claims, and broadly discussed the need for additional discovery to determine whether EPrep was engaged in a proprietary or governmental function. We will address whether EPrep was engaged in a proprietary or governmental function in our analysis of its

second assignment of error, but we note that this question has no bearing on whether EPrep is immune from intentional tort claims.

{¶ 21} R.C. 2744.02(B) provides the following enumerated exceptions to immunity:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. * * *

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility * * *.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but

not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

R.C. 2744.02(B).

**{¶ 22}** In light of the presumption of broad immunity for political subdivisions, the statute does not place the burden on the political subdivision to demonstrate that no exceptions apply; "rather, once the first tier has been met, the plaintiff must demonstrate one of the statutorily defined exceptions apply in order to proceed." *Sims v. Cleveland*, 8th Dist. Cuyahoga No. 92680, 2009-Ohio-4722, ¶ 15, citing *Walsh v. Mayfield*, 8th Dist. Cuyahoga No. 92309, 2009-Ohio-2377, ¶ 12.

**{¶ 23}** Appellees have not met their burden of establishing that one of the R.C. 2744.02(B) exceptions applies with respect to their intentional tort claims. Appellees' claims for intentional infliction of emotional distress, spoliation of evidence, and fraudulent misrepresentation all involve intentional conduct. None of the exceptions in R.C. 2744.04(B) deal with intentional conduct.

**{¶ 24}** "It is well established that under R.C. 2744.02, political subdivisions are immune from intentional torts." *Wingfield v. Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014-Ohio-2772, ¶ 9, citing *Walsh* at ¶ 11, citing *Wilson v. Stark Cty.*

*Dept. of Human Servs.*, 70 Ohio St.3d 450, 639 N.E.2d 105 (1994). Indeed, none of the exceptions in R.C. 2744.02 make any mention of intentional conduct.

{¶ 25} Appellees acknowledge the foregoing interpretation of the law, but they assert that although Ohio courts have generally interpreted R.C. 2744.01 et seq. as granting political subdivisions immunity from intentional torts, this does not preclude us from crafting an exception in this case. Appellees contend that the statute does not confer absolute immunity for intentional torts, and the egregious nature of EPrep's conduct in this case warrants a departure from existing case law. We disagree.

{¶ 26} Appellees suggest that courts have interpreted R.C. 2744.02 so as not to explicitly confer absolute immunity to political subdivisions for intentional torts. They do not, however, point to any case law that has adopted any kind of exception to immunity for intentional torts. Further, Appellees have not offered any specific criteria for such an exception beyond pointing to the "egregious" nature of the conduct in this case.

{¶ 27} The underlying incident in this case was undoubtedly horrific. If we were to hold that there is an exception to political subdivision immunity for intentional torts if the relevant conduct is "egregious," though, our holding would not only be at odds with both judicial precedent and the legislative intent of the Political Subdivision Tort Liability Act, it would be precariously vague. If the legislature had intended to create an exception to the broad political subdivision immunity for certain intentional torts, it could have included such an exception in

the statute. It did not. For these reasons, EPrep's first assignment of error is sustained.

## III. Negligence Claims

{¶ 28} In its second assignment of error, EPrep argues that the trial court erred as a matter of law by failing to dismiss Appellees' negligence claims for wrongful death, survivor, negligence, and negligent infliction of emotional distress. In denying EPrep's motion to dismiss, the trial court pointed to "the intricacies of the notification system, including the number of parties involved in said system and their interactions" and held that additional discovery was necessary to determine whether EPrep was engaged in a governmental or proprietary function. The trial court cited this court's decision in *Caraballo*, in which we held that at an early stage of the proceedings, we could not say with certainty whether the serving of school lunches was a governmental function. *Caraballo*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919, at ¶ 22.

{¶ 29} Appellees argue that EPrep is not immune from liability for negligence claims because its conduct falls within the exception codified in R.C. 2744.02(B)(2), which provides that political subdivisions can be held liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. Appellees also argue that EPrep is not immune from liability because its conduct falls within the exception codified in R.C 2744.02(B)(4), which provides that political subdivisions may be held liable for injury, death, or loss to person or

property that is caused by the negligence of their employees and that occurs within or on the grounds of, and "is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function."

{¶ 30} Further, Appellees argue that in order to survive EPrep's motion to dismiss, they were only required to plead facts and allegations sufficient to assert that an exception to immunity applied. Appellees maintain that they must be given the opportunity to engage in discovery to prove the applicability of the exceptions to immunity with actual evidence, including expert reports.

{¶ 31} As an initial matter, we note that the parties appear to disagree as to the relevant conduct at issue here. EPrep asserts that the relevant conduct is taking attendance and providing associated attendance notification to parents. Appellees assert that the relevant conduct is EPrep's involvement in creating, developing, implementing, operating, and maintaining technology to provide automated notifications to parents. For purposes of this appeal, this appears to be a distinction without a difference. To the extent that there may be any distinction between these two characterizations of EPrep's conduct, we do not believe that it would have any bearing on whether the conduct fits within either of the exceptions discussed in the following analysis.

{¶ 32} For purposes of determining whether the exception in R.C. 2744.02(B)(2) applies, the main issue we must resolve is whether EPrep was

engaged in a governmental or proprietary function. R.C. 2744.01(C) defines "governmental function" as follows:

> (1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
>
> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
>
> (b) A function that is for the common good of all citizens of the state;
>
> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

One example of a specifically enumerated governmental function is "the provision of a system of public education." R.C. 2744.01(C)(2)(c).

{¶ 33} R.C. 2744.01(G) defines "proprietary function," in relevant part, as follows:

> (1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
>
> (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
>
> (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

We note that in arguing that EPrep was engaged in a proprietary function, Appellees do not expressly address R.C. 2744.01(G)(1)(a) or offer any explanation as to why the conduct at issue is not described or specified in R.C. 2744.01(C).

{¶ 34} To determine whether EPrep was engaged in a governmental or proprietary function, we will consider whether the function is inherently related to an enumerated governmental function, whether it is statutorily mandated, and whether it is customarily engaged in by nongovernmental persons. Our analysis is guided by the notion that EPrep was not required to establish that it is entitled to immunity; rather, Appellees were required to plead facts establishing than an exception to immunity applies.

{¶ 35} R.C. 2744.01(C)(2)(c) provides that the provision of a system of public education is a governmental function. Courts have generally interpreted this broadly. The First District has cautioned that if the exception in R.C. 2744.02(B)(2) is invoked too liberally, "the balance of competing interests reflected in the structure of R.C. Chapter 2744 is undermined." *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262. ¶ 17.

{¶ 36} Ohio courts have deemed activities governmental functions where they are "so fundamental to the provision of a system of public education that [they] cannot be considered apart from the governmental function of 'providing a system of public education.'" *Schmitt v. Educational Serv. Ctr.*, 2012-Ohio-2208, 970 N.E.2d 1187, ¶ 19 (8th Dist.), quoting *Bucey* at ¶ 19.

{¶ 37} Following this reasoning, courts have found that "most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process," are governmental functions because they are fundamental to the provision of public education.

*Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12, citing *DeMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011-Ohio-1466, ¶ 29; *Taylor v. Boardman Twp. Local School Dist. Bd. of Edn.*, 7th Dist. Mahoning No. 08 MA 209, 2009-Ohio-6528, ¶ 3; *Doe v. Massillon City School Dist.*, 5th Dist. Stark No. 2006CA00227, 2007-Ohio-2801, ¶ 18; *Bush v. Beggrow*, 10th Dist. Franklin No. 03AP-1238, 2005-Ohio-2426, ¶ 37; *Coleman v. Cleveland School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 84274, 2004-Ohio-5854, ¶ 66. The kinds of activities deemed governmental functions by Ohio courts include extracurricular activities, personnel decisions, and a school's submission of student attendance and grade information.

{¶ 38} Appellees repeatedly emphasize the complicated technological functions at issue in this case. Beyond this, they offer no clear explanation as to why the conduct here would not be considered a governmental function in light of its fundamental connection to the provision of a system of public education. While the technology involved in the implementation of the notification system may be complicated, it does not follow that the notification system is not fundamental to the provision of a system of public education. The fact that attendance and corresponding parental notification are inherently related to and essential to the provision of a system of public education indicates that this activity is a governmental function.

{¶ 39} Next, we consider whether the conduct at issue here is statutorily mandated. One of the factors indicating that something is a governmental function

is whether it is "imposed upon the state as an obligation of sovereignty" and "performed by a political subdivision voluntarily or pursuant to legislative requirement." R.C. 2744.01(C)(1)(a). Further, R.C. 2744.01(C)(1)(x) provides that a governmental function is one "that the general assembly mandates a political subdivision to perform." Although EPrep may have voluntarily contracted with nongovernmental technology companies to implement its parental notification system, the taking of attendance and corresponding parental notification of unexcused absence cannot be said to have been undertaken voluntarily.

{¶ 40} This conduct is not only governed by statute, it is mandated by statute. By linking grade promotion to attendance and requiring boards of education to retain attendance officers, R.C. 3313.609 and 3321.14 impose a requirement that schools track students' attendance data. Further, R.C. 3313.205 imposes a requirement to notify a student's parent, custodian, or guardian within a reasonable time after making a determination that the student is absent from school. These statutory requirements further demonstrate that taking attendance and operating a parental notification system for student absences constitute a governmental function for purposes of R.C. 2744.02(B)(2).

{¶ 41} Finally, we address whether EPrep's conduct is customarily engaged in by nongovernmental persons. In arguing that EPrep's conduct is a proprietary function, Appellees argue that it satisfies both elements of the second part of the statutory definition of proprietary function laid out in R.C. 2744.01(G)(1)(b). First, the function "promotes or preserves the public peace, health, safety, or welfare" and

second, they argue that it involves activities that are customarily engaged in by nongovernmental persons. R.C. 2744.01(G)(1)(b).

{¶ 42} Appellees' primary argument here is that the relevant conduct involves complex technological activities that are customarily engaged in by nongovernmental persons. Because there is no dispute that the relevant conduct promotes or preserves the public peace, health, safety, or welfare, we will focus our analysis on the second aspect of the statutory definition, whether the activity is customarily engaged in by nongovernmental persons.

{¶ 43} Appellees assert that while it is clear that EPrep is responsible for providing education to students, this responsibility does not extend to the creation, development, operation, and maintenance of sophisticated data collection and notification technology. Unlike a manual attendance system, they argue on appeal that these complex activities are customarily engaged in by nongovernmental persons like the technology companies Appellees named in their complaints. Further, Appellees argue that EPrep's decision to assume the responsibility of parental notification constitutes a proprietary function.

{¶ 44} It is true that the aforementioned statutes requiring EPrep to take attendance and notify parents of unexcused absences impose no requirement that this be accomplished through the use of an intricate third-party software program. In fact, the statute is entirely silent as to the method by which a school should satisfy these requirements. EPrep's decision to use a particular notification system here does not change the fact that in doing so, it was carrying out a function inherent to

the provision of a system of public education.  The method by which EPrep elected to take attendance and notify parents of unexcused absences is not dispositive of whether that activity is a governmental or proprietary function.  The fact that EPrep interacted with nongovernmental entities and utilized third-party software to carry out a governmental function does not change the fact that it carried out a governmental function.

{¶ 45} Appellees argue that if they are permitted to engage in additional discovery, the evidence will show that it has become customary for schools to outsource attendance activities to nongovernmental persons.  Therefore, like the plaintiffs in *Caraballo*, Appellees believe that they are entitled to additional discovery to determine whether this exception to immunity applies.  *Caraballo*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919.  We disagree.

{¶ 46} A political subdivision's decision to engage a nongovernmental person to assist in a governmental function does not automatically transform that activity into a proprietary function.  *Peters v. Cincinnati*, 105 Ohio App.3d 710, 712, 664 N.E.2d 1329 (1st Dist.1995).  In considering whether an activity is customarily engaged in by nongovernmental persons, courts have consistently analyzed the authority for, and purpose of, the activity.  For example, where a political subdivision like a police department contracts with a towing company to order an abandoned vehicle to be towed from a public street, this constitutes a governmental function, despite the fact that the function is sometimes performed by private entities.  *Id.* This is because it is not customary for a towing company to order an abandoned

vehicle to be towed from a public street, nor does a towing company have the authority to do so. *Id.*

{¶ 47} This reasoning applies to the instant case. To the extent that any nongovernmental technology companies were engaged in attendance notification related to EPrep's students, they were so engaged at the instruction of EPrep. EPrep, of course, is a political subdivision with a statutory authority and duty to collect attendance information and notify parents of unexcused absences.

{¶ 48} Moreover, in order for Appellees to survive a motion to dismiss based on political subdivision immunity, it must be clear that no set of facts and allegations in their complaint supports liability against EPrep. Nowhere in any of Appellees' complaints did they allege that the operation of attendance notification systems is an activity customarily engaged in by nongovernmental persons. Although Appellees made numerous allegations about various companies' involvement with EPrep relating to the notification system in this case, none of these allegations could be reasonably construed as asserting that technology companies are customarily engaged in school attendance notification systems.

{¶ 49} We agree with Appellees assertion that they were only required to plead facts sufficient to assert that an exception to immunity applies. We disagree that they satisfied this requirement where the complaint contains no allegations that the conduct is customarily engaged in by nongovernmental persons. Where there is no set of facts that remove immunity, courts err in denying a motion to dismiss based on immunity. *Hendrickson v. Haven Place, Inc.*, 8th Dist. Cuyahoga

No. 100816, 2014-Ohio-3726, ¶ 21, citing *Caraballo*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919, at ¶ 9. While we acknowledge that immunity questions are more appropriately resolved on summary judgment, plaintiffs are not entitled to additional discovery where no set of facts alleged in their complaint would remove immunity. *Id.*

{¶ 50} Taking attendance and notifying parents of absences is inherently related to the provision of a system of public education, is statutorily required, and is not customarily engaged in by nongovernmental actors. For these reasons, we conclude that Appellees did not satisfy their burden of establishing that EPrep was engaged in a proprietary function. Therefore, the exception in R.C. 2744.02(B)(2) does not apply.

{¶ 51} For purposes of determining whether the exception in R.C. 2744.02(B)(4) applies, we must determine whether the injury occurred on the grounds of buildings used in connection with a governmental function, and whether the injury was due to physical defects of those grounds or buildings. R.C. 2744.02(B)(4).

{¶ 52} Appellees argue that the first element of this exception is satisfied because EPrep's negligence occurred on its grounds and resulted in harm to Appellees. They argue that the second element of this exception is satisfied because the injury was due to a physical defect on EPrep's grounds: the "malfunctioning" notification system. We disagree.

{¶ 53} With respect to the first element of this exception, Appellees rely on a 2002 case in which the Ohio Supreme Court held that the exception in R.C. 2744.02(B)(4) applies "to all cases where an injury resulting from the negligence of an employee or a political subdivision occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 18. Therefore, they argue, the location of the injury is not relevant because all injuries caused by employee negligence on the political subdivision's property are actionable.

{¶ 54} Since *Hubbard*, however, Ohio courts have routinely interpreted the exception as requiring that the injury occurred "within or on the grounds of the [political subdivision's] property," pursuant to the plain language of the statute. *Vento v. Strongsville Bd. of Edn.*, 8th Dist. Cuyahoga No. 88789, 2007-Ohio-4172, ¶ 9, citing *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325, 329, 2005-Ohio-4821, 837 N.E.2d 859, ¶ 12 (10th Dist.); *Sherwin Williams Co. v. Dayton Freight Lines*, 161 Ohio App.3d 444, 2005-Ohio-2773, 830 N.E.2d 1208 (2d Dist.); *Kennerly v. Montgomery Cty. Bd. of Commrs.*, 158 Ohio App.3d 271, 2004-Ohio-4258, 814 N.E.2d 1252, ¶ 19 (2d Dist.). In affirming a decision of the Second District, the Ohio Supreme Court held that R.C. 2744.02(B)(4) clearly "[limits] the reach of a political subdivision's liability to injuries or losses that occur on property within the political subdivision." *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, 858 N.E.2d 324, ¶ 17. Appellees are unable to cite

to any authority beyond *Hubbard* that supports their purported extension of R.C. 2744.02(B)(4).

{¶ 55} Even if Appellees were able to satisfy the first element of this exception, they are unable to satisfy the second element. Given how much of our society, including our public education system, increasingly relies on technology, we cannot hold that a "malfunctioning" parental notification system constitutes a physical defect of the sort envisioned by the legislature in crafting the R.C. 2744.02(B)(4) exception. Therefore, the exception in R.C. 2744.02(B)(4) does not apply here.

{¶ 56} Similarly, Appellees have not established that EPrep's conduct here falls within any of the other exceptions enumerated in R.C. 2744.02(B). The exception outlined in R.C. 2744.02(B)(1) relates to the negligent operation of a motor vehicle, which is clearly not applicable to this case. Likewise, the exception in R.C. 2744.02(B)(3) relates to the negligent failure to keep public roads in repair or to remove obstructions from public roads, which is not applicable to this case. Finally, the exception outlined in R.C. 2744.02(B)(5) provides an exception to political subdivision immunity when civil liability is expressly imposed upon the political subdivision by statute. Appellees do not point to any section of the Revised Code that expressly imposes liability on a political subdivision, and therefore could not have established that this exception applies.

{¶ 57} Because Appellees have not established that an exception to the broad immunity laid out in R.C. Chapter 2744 applies, the trial court erred in denying EPrep's motion to dismiss.

{¶ 58} Judgment is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

EILEEN T. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR