[Cite as *Beachwood City School Dist. Bd. of Edn. v. Warrensville Hts. City School Dist. Bd. of Edn.*, 2025-Ohio-830.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

BEACHWOOD CITY SCHOOL :
DISTRICT BOARD OF EDUCATION,
ETC.,

       Plaintiff-Appellee, :

                                      No. 113803

       v. :

WARRENSVILLE HTS. SCHOOL :
DISTRICT BOARD OF EDUCATION,
ETC.,

       Defendant-Appellant. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-902080

---

### *Appearances:*

Reminger Co., LPA, Holly Marie Wilson, and Brianna M. Prislipsky, *for appellee*.

Taft Stettinius & Hollister LLP, Adrian D. Thompson, Thomas J. Lee, and Mira Aftim; Pepple & Waggoner, Ltd., Christian M. Williams, and Donna M. Andrew, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1}   The crux of this interlocutory appeal is whether defendant-appellant, Warrensville Heights City School District Board of Education ("Warrensville Heights") is entitled to "Political Subdivision Tort Liability" under R.C. Ch. 2744 for plaintiff-appellee, Beachwood City School District Board of Education's ("Beachwood"), noncontract claims — promissory estoppel, fraud, conversion, and unjust enrichment, arising out of the parties' settlement agreement.  Because the parties' settlement agreement addresses the sharing of revenue between the two school districts, the contractual dispute is unrelated to the provision of a system of public education and, as a result, is not a governmental function.  Therefore, Warrensville Heights is not entitled to immunity, and we affirm the trial court's judgment denying Warrensville Heights' motion for partial summary judgment.

## I.  Facts and Procedural History

{¶ 2}   This appeal arises from a reversal and remand by this court in *Beachwood City School Dist. Bd. of Edn. v. Warrensville Hts. City School Dist. Bd. of Edn.*, 2020-Ohio-4459, ¶ 1 (8th Dist.) ("*Beachwood I*"), and affirmance and remand of *Beachwood I* by the Ohio Supreme Court in *Beachwood City School Dist. Bd. of Edn. v. Warrensville Hts. City School Dist. Bd. of Edn.*, 2022-Ohio-3071 ("*Beachwood II*").  The facts underlying this dispute were previously set forth in both cases, and we incorporate them as if fully rewritten herein.

{¶ 3} In essence, the dispute arises over how to share the tax revenue from a 405-acre tract of land known as the Chagrin Highlands (the "Chagrin Land"). Beachwood and Warrensville Heights entered into two agreements in 1997, which provided that the school districts would share the tax revenue from the Chagrin Land that the city of Beachwood annexed from the city of Cleveland in 1990.

{¶ 4} The issue in *Beachwood I* was limited to whether the agreements that the parties spent years negotiating were valid and enforceable. *Id.* at ¶ 1. Beachwood raised one assignment of error, arguing that the trial court erred in granting summary judgment in favor of Warrensville Heights. Beachwood identified "three issues under its sole assignment of error: (1) whether the parties' agreements are valid without approval from the Ohio Board of Education; (2) whether their agreements are valid without fiscal certificates; and (3) whether Warrensville Heights is immune from Beachwood's tort claims." *Id.* at ¶ 2. We found merit to Beachwood's argument, held that the 1997 agreements are valid and enforceable, and reversed the trial court's judgment. *Id.* at ¶ 3. Additionally, we remanded that matter for the trial court to consider whether Warrensville Heights has immunity, and to resolve the remaining factual disputes regarding Beachwood's breach-of-contract claims and claims for promissory estoppel, unjust enrichment, fraud, and conversion. *Id.* at ¶ 56-57.

{¶ 5} Following our decision in *Beachwood I*, Warrensville Heights appealed to the Ohio Supreme Court in *Beachwood II*. Because the Ohio Supreme Court also concluded that the parties' agreement was valid and enforceable, the

Court affirmed our judgment in *Beachwood I* and remanded the matter to the trial court to adjudicate the noncontract claims (promissory estoppel, unjust enrichment, fraud, and conversion) and whether Warrensville Heights was immune from liability on these claims. *Beachwood II* at ¶ 3, 51.

{¶ 6} On remand from the Ohio Supreme Court, the trial court issued a judgment entry stating that

> [a]t this point, the parties have a judicial declaration that there is a valid and enforceable contract between them. The existence of a contract having been established, it is now [Beachwood's] burden to prove a breach and damages, and [Warrensville's] right to contest the proof of those elements. A decision on those issues — either through a trial or upon an appropriate dispositive motion — will settle Beachwood's right, or not, to the unremitted taxes.
>
> This appears to make the other causes of action [promissory estoppel, unjust enrichment, conversion, and fraud] as not justiciable.
>
> . . .
>
> It therefore appears that upon the supreme court's declaration that the parties' contract is valid and enforceable, the other causes of action are moot and should be dismissed either under Rule 41(A)(2) of the Ohio Rules of Civil Procedure or on an appropriate Civil Rule 56 motion for summary judgment by the defendant.
>
> The plaintiff is therefore ordered to notify the court and the defendant by March 17, 2023, of its intention to either litigate or dismiss counts three through six of the complaint.

(Judgment entry, Feb. 27, 2023.)

{¶ 7} Beachwood elected to litigate the remaining counts, and Warrensville Heights moved for partial summary judgment. Regarding immunity, Warrensville Heights argued it is statutorily immune from the promissory estoppel, unjust enrichment, conversion, and fraud causes of action as a public school performing a

governmental function as set forth in R.C. 2744.02. Beachwood opposed, arguing that Warrensville Heights failed to satisfy the first step of the immunity analysis because the contractual dispute arose from revenue sharing, which did not constitute a governmental function. Beachwood also argued that political subdivision immunity only applies to tort claims, which would exclude its promissory estoppel and unjust enrichment causes of action. On January 23, 2024, the trial court issued a journal entry denying Warrensville Heights' motion for partial summary judgment.

{¶ 8} It is from this order that Warrensville Heights now appeals, raising the following single assignment of error:

> The trial court should have granted Warrensville Heights' motion for partial summary judgment on Counts Three through Six of Beachwood's complaint. Those counts allege equitable or tort claims; Warrensville Heights is immune from liability on those claims under R.C. Chapter 2744.

## II. Law and Analysis

### A. Summary Judgment Standard of Review

{¶ 9} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 10} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of

law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 11} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).  If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial.  *Id.* at 293.

{¶ 12} "Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, the burden is strictly upon the moving party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that [the moving party] is entitled to judgment as a matter of law.  Civ. R. 56(C)."  *Angus v. Blue Cross & Blue Shield*, 1992 Ohio App. LEXIS 3935, *8 (8th Dist. July 30, 1992).

## B. R.C. Chapter 2744 — Political Subdivision Tort Liability Act

{¶ 13} "R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act, was enacted in response to the judicial abrogation of the common-law immunity of political subdivisions."  *Riscatti v. Prime Properties Ltd. Partnership*, 2013-Ohio-4530, ¶ 15, citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 558

(2000). The purpose of R.C. Ch. 2744 is to shield political subdivisions from tort liability in order to preserve their fiscal integrity. *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 23, citing *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 453 (1994).

{¶ 14} In enacting R.C. Ch. 2744, the General Assembly made clear that "'the protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents.'" *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 38, quoting Am.Sub.H.B. No. 176, Section 8, 141 Ohio Laws, Part I, 1733.

{¶ 15} The Ohio Supreme Court has delineated a three-tiered analysis in determining whether a political subdivision has immunity. *Smith v. McBride*, 2011-Ohio-4674, ¶ 13, citing *Colbert v. Cleveland*, 2003-Ohio-3319; *Lambert v. Clancy*, 2010-Ohio-1483. First, the party alleging immunity enjoys a general grant of immunity under R.C. 2744.02(A)(1), which provides that "'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'" *Id.*, quoting R.C. 2744.02(A)(1).

{¶ 16} Political-subdivision immunity, however, is not absolute. *Cater v. Cleveland*, 83 Ohio St.3d 24 (1998), citing R.C. 2744.02(B); *Hill v. Urbana*, 79 Ohio

St.3d 130 (1997). The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability. *Smith* at ¶ 14, citing *Colbert* at ¶ 8; *Lambert* at ¶ 9. If none of the exceptions in R.C. 2744.02(B) apply, and if no defense in that section applies to negate the liability of the political subdivision, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity. *Smith* at ¶ 15. In the instant case, we must determine whether this immunity applies to Warrensville Heights.

{¶ 17} To resolve Warrensville Heights' assignment of error, we focus on the portion of R.C. 2744.02(A)(1) stating that "a political subdivision is not liable in damages . . . in connection with a governmental . . . function." Our focus is here because Warrensville Heights is not entitled to immunity without a "governmental function." Relevant to this appeal, R.C. 2744.01(C) defines "governmental function" as follows:

> (1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
>
> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
>
> (b) A function that is for the common good of all citizens of the state;
>
> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

(2) A "governmental function" includes, but is not limited to, the following:

. . .

(c) The provision of a system of public education. . . .

{¶ 18} Warrensville Heights argues that by negotiating how to share the Chagrin Land's tax revenue, they were engaged in "the provision of a system of public education." Beachwood argues that Warrensville Heights is not engaged in a governmental function because the contract is unrelated to the provision on public education and their settlement agreement addresses the sharing of revenue between the two school districts to settle a dispute. We find Beachwood's argument more persuasive. In reaching this conclusion, we find *Fried v. Friends of Breakthrough Schools*, 2020-Ohio-4215 (8th Dist.), instructive.[1]

{¶ 19} In *Fried*, we addressed what constitutes a governmental function. In doing so, we considered its definition under R.C. 2744.01(C), "whether the function is inherently related to an enumerated governmental function" and "whether it is statutorily mandated." *Id.* at ¶ 34.

{¶ 20} R.C. 2744.01(C)(2)(c) provides that the provision of a system of public education is a governmental function. The *Fried* Court noted that this term has generally been broadly interpreted, but cautioned that "if the exception in R.C. 2744.02(B)(2) is invoked too liberally, 'the balance of competing interests

---

[1] We note that the issue in *Fried* involved a motion to dismiss, not a motion for summary judgment. This distinction, however, does not affect our analysis.

reflected in the structure of R.C. Chapter 2744 is undermined.'" *Id.* at ¶ 35, quoting *Bucey v. Carlisle*, 2010-Ohio-2262. ¶ 17 (1st Dist.). We went on to state:

> Ohio courts have deemed activities governmental functions where they are "so fundamental to the provision of a system of public education that [they] cannot be considered apart from the governmental function of 'providing a system of public education.'" *Schmitt v. Educ. Serv. Ctr.*, 2012-Ohio-2208, 970 N.E.2d 1187, ¶ 19 (8th Dist.), quoting *Bucey* at ¶ 19.
>
> Following this reasoning, courts have found that "most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process," are governmental functions because they are fundamental to the provision of public education. *Perkins v. Columbus Bd. of Educ.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12, citing *DeMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011-Ohio-1466, ¶ 29; *Taylor v. Boardman Twp. Local School Dist. Bd. of Edn.*, 7th Dist. Mahoning No. 08 MA 209, 2009-Ohio-6528, ¶ 3; *Doe v. Massillon City School Dist.*, 5th Dist. Stark No. 2006CA00227, 2007-Ohio-2801, ¶ 18; *Bush v. Beggrow*, 10th Dist. Franklin No. 03AP-1238, 2005-Ohio-2426, ¶ 37; *Coleman v. Cleveland School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 84274, 2004-Ohio-5854, ¶ 66. The kinds of activities deemed governmental functions by Ohio courts include extracurricular activities, personnel decisions, and a school's submission of student attendance and grade information.

*Id.* at ¶ 36-37.

{¶ 21} Warrensville Heights emphasizes that the distribution of the Chagrin Land tax revenue supports public education. Beyond this, they offer no clear explanation as to why the money it agreed to pay Beachwood under the terms of the settlement agreement is conduct that would be considered a governmental function. While each school district's decision as to how to spend the tax revenue may be considered a governmental function under R.C. 2744.01(C), that is not the issue before us. The issue here is not how Warrensville Heights decides to spend the tax

revenue. Rather, the focus here is on fact that the parties have an enforceable settlement agreement and Warrensville Heights' breach of the terms of that agreement. We find that this breach of contract is conduct that is not related to the provision of a system of public education and, as a result, is not a governmental function.

{¶ 22} Next, we consider whether the conduct at issue here is statutorily mandated. One factor indicating a governmental function is whether it is "'imposed upon the state as an obligation of sovereignty'" and "'performed by a political subdivision voluntarily or pursuant to legislative requirement.'" *Fried* at ¶ 39, quoting R.C. 2744.01(C)(1)(a). R.C. 2744.01(C)(2)(x) provides that a governmental function is one "that the general assembly mandates a political subdivision to perform." Warrenville's Heights' actions of voluntarily entering into a settlement agreement to resolve a dispute between the two school districts is not an "obligation of sovereignty," nor was it performed "pursuant to legislative requirement," sufficient to qualify as a governmental act. This conduct is not governed by statute. The absence of statutory requirements further demonstrates the lack of a governmental function for purposes of R.C. 2744.02(B)(2).

{¶ 23} Thus, based on the foregoing, Warrensville Heights is not entitled to political subdivision immunity for Beachwood's unjust-enrichment, promissory estoppel, fraud, and conversion claims. No genuine issue of material fact remains — Warrensville Heights' breach of the settlement agreement is not conduct related to the provision of a system of public education and, as a result, is not a

governmental function. Therefore, we find that the trial court's denial of Warrensville Heights' motion for partial summary judgment was proper.

{¶ 24} The sole assignment of error is overruled.

{¶ 25} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
ANITA LASTER MAYS, J., CONCUR